UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LISA R. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-cv-04025-SLD-JEH |
| ) | |
| CITY OF GALESBURG, ILLINOIS, a ) | |
| municipal corporation; and DAVID W. ) | |
| JONES, Human Resource and Risk ) | |
| Management, individually and in his official ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |
| ) | |

ORDER

Before the Court is Defendants' motion to dismiss, ECF No. 3.  For the following reasons, the motion is GRANTED, although not all of Plaintiff's claims are hereby dismissed.

**BACKGROUND[1]**

Plaintiff Lisa Wilson, who is African-American, has worked for the City of Galesburg ("the City") since March 20, 1996.  She works as a secretary in the "Handivan Division" of the City's Community Development Department.  She points out that although the Galesburg's population is 11% African-American according to the 2013 census, less than 1% of the City's 237 employees (2 of them) identify as African-American or black.

In July 2012, Defendant Jones, who is white,[2] was hired by the City as its Human Resource and Risk Manager.  At some point after being hired, Jones told an unspecified co-

---

[1] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff.  *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted).  Accordingly, the material set forth here is, unless otherwise noted, based on allegations in the Complaint, ECF No. 1.

1

worker that since there was another City employee besides Wilson whose first name was "Lisa," he would call Wilson "the black Lisa." He did not refer to the other Lisa with a racial sobriquet.

In February or March of 2014, Wilson was required by the City to take a drug test. Jones represented that this was because Wilson was classified as a dispatcher at the time (although she was not), and the drug test was required for dispatchers. Wilson asserts that no non-African-American employees working as dispatchers or secretaries were required to take the test.[3] After the test results (impliedly negative, although Wilson does not say) were delivered to the City, Jones discussed these results with one of Wilson's co-workers. He also asked Wilson's supervisor if she thought that Wilson would pass the test. He also told one of Wilson's other co-workers that the way to eliminate undesirable employees was to give them a drug test. Wilson was distressed by all of this conduct.

Wilson filed the instant lawsuit on February 2, 2016, bringing claims under two Counts: (I) 42 U.S.C. § 1981, Compl. 3, ECF No. 1, and (II) 42 U.S.C. § 1983, Compl. 3–4. She alleges both Counts as to both defendants.

## DISCUSSION

Although Defendants request that the complaint be dismissed in its entirety, Mem. Supp. Mot. Dismiss 9, ECF No. 4, they argue only that: (1) Wilson fails to allege a municipal policy or custom sufficient to support her § 1983 claim against the City, *id.* at 3–5; (2) the claims against the City under § 1981 must be dismissed because they rise or fall with the § 1983 claim, *id.* at 5–6; (3) the freestanding § 1981 claim against Jones in his individual capacity must be dismissed

---

[2] This appears to be Wilson's drift in identifying Jones as "Caucasian." That term originates in early racial science and anthropometry. *See* "Caucasian race," Wikipedia, https://en.wikipedia.org/wiki/Caucasian_race (visited on December 9, 2016). While the racial descriptor the Court uses is not without its own ambiguities, the Court prefers it for reasons of currency and comprehensibility.

[3] Since Wilson asserts that there is only one other City employee who identifies as black or African-American, this may amount to saying that she was the only person tested; she does not say whether the other African-American or black employee worked as either a secretary or dispatcher, and whether this person was tested.

for the same reasons, *id.* at 6–8; and (4) venue is not proper in Peoria, where the suit was originally filed, *id.* at 8. (Plaintiff conceded the final point, Mem. Supp. Resp. Mot. Dismiss 8–9, ECF No. 8, and the case has since been transferred to the Rock Island division.) Since Defendants do not argue that the § 1983 claim, or the § 1981 claim insofar as it is brought pursuant to § 1983, against Jones in his individual capacity must be dismissed, they have failed to support with argument the request for dismissal of the entire case. The Court addresses below the arguments Defendants do make.

## I. Legal Standard on a Motion to Dismiss

In reviewing a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). A court will dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In determining whether such a claim has been stated, a court should first identify pleadings that "because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). It should then take the remaining, well-pleaded factual allegations, "assume their veracity[,] and . . . determine whether they plausibly give rise to an entitlement to relief." *Id*. This means that a complaint must provide "allegations that raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

## II. Analysis

### a. 42 U.S.C. § 1983 Claim Against the City

Defendants argue that Wilson's § 1983 claim against the City does not allege that a municipal policy or custom gave rise to her injuries, and thus must be dismissed under the rule of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which requires the existence of

such a policy or custom as a predicate to municipal § 1983 liability.  Mem. Supp. Mot. Dismiss 4.

42 U.S.C § 1983 creates a cause of action for federal deprivation of statutory and constitutional rights by state actors that is "based on personal liability and predicated upon fault . . . ."  *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (2003).  Thus, while an individual acting under color of law who deprives someone of a right can be held personally liable for the deprivation under § 1983, a municipality for which that individual works is liable for the deprivation only if the deprivation is caused by that municipality's policy or custom.  *See Monell*, 436 U.S. at 694.  (This is another way of saying that automatic, or respondeat superior liability, as that concept is applied in the law of torts, does not exist as against municipalities under § 1983.  *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 795 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015).)  "[A] plaintiff may demonstrate the existence of a municipal policy or custom in one of three ways:  proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority."  *Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

An "allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing [a] municipality," because it is generally not sufficient on its own to show a policy or practice.  *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) (citing *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981)).  To demonstrate municipal liability on a "widespread practice" theory, a plaintiff must show that the

municipality's widespread custom or practice was the "moving force" behind his injury. *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 400 (1997).

As explained above, § 1983 creates a cause of action for deprivations of federally secured rights, and does not itself secure or create a particular right. Thus, someone trying to make out a claim under § 1983 must also allege the violation of a particular right secured by the Constitution or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Wilson's complaint does not do so, merely alleging a general violation of § 1983. Compl. 3–4. However, she clarifies in her response to Defendants' motion that she means that (1) her fourth amendment right to be free from unreasonable searches and seizures was violated by the drug test, Mem. Supp. Resp. Mot. Dismiss 4; (2) that her fourteenth amendment right to equal protection of the laws was violated by the City's "underutilization of minorities," coupled with the application of the drug test to her alone, and Jones's other alleged behavior; and (3) that her freedom to make and enforce contracts under § 1981 was impeded by the test and all of Jones's workplace behavior, pursuant to § 1981.[4]

Wilson's § 1983 claim against the City fails because she does not allege that any of these deprivations were a consequence of the City's policies or customs. Wilson explains that although the City's official policy on alcohol and drug testing allows the City to test employees who perform "safety sensitive function[s]," Mem. Supp. Resp. Mot. Dismiss 6, she is employed

---

[4] Wilson does not make the allegation that violation of her § 1981 rights supports her § 1983 claim in her response. However, she can only bring the § 1981 claims her complaint alleges via the cause of action § 1983 provides, as explained below. Additionally, Wilson seems to suggest briefly that she also aims to bring claims under Title VII, and that these too support her § 1983 claims. Mem. Supp. Resp. Mot. Dismiss 6 ("Moreover, there can be no question that under Title VII of the 1964 Civil Rights Act, a federal statute, plaintiff is protected from disparate treatment based on her race."). If she does seek to do so, however, she misunderstands the essential differences between § 1983 and Title VII, the latter of which provides an independent cause of action for plaintiffs alleging workplace discrimination, and may be dismissed if a plaintiff has not exhausted her administrative remedies. *Trigg v. Fort Wayne Cmty. Sch.*, 766 F.2d 299, 302 (7th Cir. 1985) ("A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII.").

5

as a secretary and thus does not fall under the City's policy permitting drug tests. Therefore, she argues, her complaint alleges Jones

> used this policy passed by the City Council of the City of Galesburg to discriminate against [her] by requiring her to take a drug test even though her [sic] other Caucasian [sic] employees in her classification were not required to take the test. In other words, Jones used the policy to discriminate against plaintiff based on her race . . . .

*Id.* But this theory alleges neither an express policy, nor a widespread practice, nor again causation by a person with final policymaking authority, as it must to make out a *Monell* claim. *See Kujawski*, 183 F.3d at 737.

First, Wilson alleges the existence of a *non*-discriminatory express policy—merely (in her response) a policy of drug testing employees who performed safety sensitive functions. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (explaining that the question under this prong of *Monell* is whether policies for which the city is responsible are "closely related to the ultimate injury").

Second, she does not allege a widespread municipal practice that caused her injury. Assuming for the moment that her alleged injuries do constitute injuries, she has only alleged, on a generous reading of the complaint, that Jones orchestrated her being made to take a drug test in contravention of City policy and for the purpose of ousting her from her position, and that he made racially discriminatory comments about her on one occasion. These two isolated incidents are insufficient to give rise to the inference of a widespread practice of discrimination against African-American employees, rather than two acts of misbehavior by one employee. *See Strauss*, 760 F.2d at 767. Even assuming that his actions were pursuant to some unnamed and unalleged municipal practice, Wilson makes no allegations suggesting that "through its

6

*deliberate* conduct, the municipality was the 'moving force' behind the injury alleged," as she must to make out her claim. *Bryan County*, 520 U.S. at 404.

Third, Wilson does not allege that Jones was a person with final policymaking authority. In order for a municipality to be liable on this theory under *Monell*, someone with final policymaking authority as a matter of state law must have adopted a policy pursuant to which the municipality's injurious action was taken. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Wilson makes no allegations that Jones had policymaking authority, that it was conferred upon him by virtue of his position as a matter of state law, or that his use or misuse of the official drug-testing policy represented a policy pursuant to which the City's allegedly injurious actions were taken.

Finally, the Court notes that a few of the complaint's more conclusory allegations such as the blanket claim that Wilson was "subjected to . . . different terms and conditions of employment because of her race," Compl. 3, are "no more than conclusions, [and] are not entitled to the assumption of truth" ordinarily given to a complaint's allegations at the motion to dismiss phase. *Iqbal*, 556 U.S. at 679.

Because Wilson does not allege that the City's policies or deprivations caused her harm, her claims against it under § 1983 must be dismissed. Additionally, the Court notes that, as Defendants argue, the claims against Jones, insofar as they are made against him in his "official capacity," are nothing more than claims against the City, and subject to dismissal for the same reasons. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

b. **42 U.S.C. § 1981 Claim Against the City**

Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas*

*Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).  This remains so in the Seventh Circuit even after Congress amended § 1981 to broaden its protections.  *Campbell v. Forest Pres. Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 671 (7th Cir. 2014).  Because Wilson's § 1981 claim against the City must therefore be brought pursuant to § 1983, it fails, just as her equal protection and unreasonable search and seizure claims do.

    **c. Remaining Claims against Jones in his Individual Capacity**

Under Section D of their memorandum in support of their motion to dismiss, Defendants argue that "[t]he claims against David W. Jones individually must be dismissed."  Mem. Supp. Mot. Dismiss 6.  However, the section only argues that the § 1981 claim against Jones, insofar as it was intended to be brought against him individually not under the cause of action created by § 1983, must be dismissed. *Id.* at 6–8.  The Court agrees with the Sixth Circuit's holding, cited by Defendants, that "§1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012).  However, Defendants make no argument that Wilson's § 1983 claim against Jones as an individual, alleging violations of § 1981 and the constitution, must be dismissed.  It is well settled that a plaintiff may allege individual liability of a state actor under § 1983 if she alleges that a defendant was "personally responsible for the deprivation of a constitutional right" because "he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651–52 (7th Cir. 2001)).  Since Defendant does not argue that Wilson's § 1983 claim against Jones must be dismissed, the Court will not consider whether it should be dismissed, and will not dismiss it.

## CONCLUSION

Accordingly, Defendants' motion to dismiss, ECF No. 3, is GRANTED, insofar as the claims against Defendant City of Galesburg are DISMISSED. The Clerk is directed to terminate the City of Galesburg from the case.

Entered this 22nd day of December, 2016.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
