UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LISA R. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:16-cv-04025-SLD-JEH |
| DAVID JONES, | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court are Plaintiff Lisa Wilson's Motion for Leave to File an Amended Complaint, ECF No. 30; the Magistrate Judge's Report and Recommendation as to Wilson's motion, ECF No. 36; and Defendant David Jones's Motion for Summary Judgment, ECF No. 49. For the reasons that follow, the Report and Recommendation is ADOPTED, Plaintiff's motion is DENIED, and Defendant's motion is GRANTED.

## BACKGROUND[1]

Since 2011, Wilson, who is African-American, has worked for the City of Galesburg ("the City") in the "Handivan Division" of the City's Community Development Department, which provides curbside transportation for residents with special needs. Wilson's position is classified as "Secretary I." Her job duties include clerical work and dispatch. As to the latter, Wilson fields calls from Handivan passengers about when and where they want to be picked up

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are, unless otherwise noted, taken from Jones's statement of undisputed material facts, Mot. Summ. J., ECF No. 49; from Wilson's disputed material and immaterial facts and additional material facts, Resp. Disputed Material Facts, ECF No. 53; from Jones's reply thereto, Reply, ECF No. 54; and from the exhibits to the motions. Where the parties disagree about the facts, the Court views the evidence in the light most favorable to Wilson, the non-moving party, and draws all reasonable inferences in her favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

1

and relays this information to the Handivan drivers. She does not provide turn-by-turn guidance to the drivers, who are free to select their own routes. Wilson Dep. 68:4–69:5, Mot. Summ. J. Ex. A, ECF No. 49-1 at 18–19 ("I would call out to the driver and let them know that they have a passenger ready or there's been a change to their schedule. But they take whatever route they choose . . . I would just tell them, you have a passenger ready at Cottage ER or Wal-Mart.").

The Handivan Division receives federal funding through the Department of Transportation and, consequently, must comply with applicable federal regulations. This includes regulations promulgated by the Federal Transit Administration ("FTA") regarding prohibited alcohol and drug use, which mandate drug and alcohol testing of transportation employees responsible for safety-sensitive functions. 49 C.F.R. § 655.1. These functions include "[c]ontrolling dispatch or movement of a revenue service vehicle." 49 C.F.R. § 655.4. The City's Handivans are revenue service vehicles.

In July 2012, Jones was hired by the City as the Human Resource and Risk Manager. In this role, Jones was required to ensure the City complied with all federal, state, and local laws and regulations. He determined Wilson was the only Handivan employee not in the pool subject to random drug testing. In February 2014, Jones consulted Wilson, asking about her job duties. She told Jones that she performed dispatch duties. Wilson Mem. Mar. 12, 2014, Mot. Summ. J. Ex. B, ECF No. 49-2 ("I told him that I did clerical work and dispatch."). Thereafter, Jones determined that Wilson should be in the drug testing pool. Other City employees disagreed because, in years prior, the prevailing opinion was that Wilson did not perform safety-sensitive functions because she did not provide turn-by-turn guidance. In addition, two audits in recent years had not found that the Handivan Division was out of compliance with federal regulations because Wilson was not in the drug testing pool.

2

Upon being added to the drug testing pool, Wilson had to submit to an initial drug test. She was informed that she would not hear anything unless the result was positive. However, in March 2014, Jones came to the Handivan office and informed another Handivan employee, Allyson Andrews, who is also African-American, of Wilson's results, which were negative.[2] Jones testified he mistook Andrews for Wilson, Mot. Summ. J. Undisputed Material Facts ¶ 38, though Wilson disputes this assertion, Resp. Disputed Material Facts ¶ 38.

Around this time, Jones also made several racially offensive statements to various City employees. With reference to adding Wilson to the drug testing pool, Jones said to a coworker: "Well, don't you think she should be tested? She's black." Main Dep. 16:1–2, Mem. Opp. Mot. Summ. J. Ex. L, ECF No. 52-3. Jones also asked Wilson's supervisor if she thought Wilson would pass the test. Mannon Aff. ¶ 14, Mem. Opp. Mot. Summ. J. Ex. N, ECF No. 52-5. Jones testified he did not recall making either of these statements. Jones Dep. 70:21–71:10, 78:18–79:8, Mot. Summ. J. Ex. C, ECF No. 49-3 at 19. Jones also told Andrews that because there was another City employee besides Wilson whose first name was "Lisa," he would call Wilson "the black Lisa." Andrews Aff. ¶¶ 9, 17, Mem. Opp. Mot. Summ. J. Ex. M, ECF No. 52-4.

In January 2017, the City Council passed a new policy on drug testing. This is the first iteration that lists the Handivan Secretary I position as one subject to random drug testing. Since its passage, Wilson has been selected for testing. Jones is no longer employed by the City.

**PROCEDURAL BACKGROUND**

On February 6, 2016, Wilson filed a two-count complaint against the City and Jones. Compl., ECF No. 1. Jones was sued in his official and individual capacities. Count One alleged a violation of 42 U.S.C. § 1981. Count Two alleged violations of Wilson's constitutional

---

[2] Jones testified that he verbally told Andrews the test was negative, Jones Dep. 46:10–13, Mot. Summ. J. Ex. C, ECF No. 49-3 at 13, while Andrews averred that Jones handed her a physical copy of the results, Andrews Aff. ¶ 10, Mem. Opp. Mot. Summ. J. Ex. M, ECF No. 52-4.

rights—it did not specify which rights—pursuant to 42 U.S.C. § 1983. Defendants filed a motion to dismiss. Mot. Dismiss, ECF No. 3. In her response, Wilson clarified her allegations: she claims that the drug test violated her Fourth Amendment right to be free from unreasonable searches and seizures; that her Fourteenth Amendment right to equal protection of the laws was violated by the City's "underutilization of minorities," coupled with the application of the drug test to her alone, and Jones's other alleged behavior; and that her freedom to make and enforce contracts under § 1981 was impeded by the drug test and all of Jones's workplace behavior.[3] *See* Mem. Opp. Mot. Dismiss 4–6, ECF No. 8.

The Court granted Defendants' motion, dismissing all claims against the City, which was terminated as a defendant. *See* Order 9, ECF No. 10. The Court also dismissed Wilson's claims against Jones in his official capacity, as well as any freestanding § 1981 claim against him in his individual capacity. *Id.* at 7–8. The claims that went forward were those against Jones in his individual capacity pursuant to § 1983, including a § 1981 claim, a Fourth Amendment claim, and a Fourteenth Amendment equal protection claim. *Id.* at 8.

On February 17, 2017, Magistrate Judge Jonathan E. Hawley entered a Rule 16 Scheduling Order, which set a March 19, 2017 deadline for amended pleadings for Wilson, and a March 20, 2017 deadline for Jones. *See* Feb. 17, 2017 Minute Entry (adopting the dates outlined in the Discovery Plan, ECF No. 16). The Scheduling Order also set a discovery deadline of January 17, 2018, and a dispositive motion deadline of February 17, 2018. *Id.*

On November 15, 2017, Wilson filed a motion for leave to file an amended complaint pursuant to Rule 15(a)(2). Mot. Leave Amend, ECF No. 30. In support, Wilson cites several "substantial change[s] in the circumstances of the parties": in January 2017, the City adopted a

---

[3] Wilson did not specify that her § 1981 claim against Jones in his individual capacity was brought pursuant to § 1983, but "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor acting in his individual capacity." Order 5 n.4, 8 (quoting *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012)).

4

new policy on drug testing, which includes Wilson's position among those subject to random drug testing; Wilson became aware of the new policy when Jones asked her to sign it thereafter; in April 2017, she was tested pursuant to the new policy; also in April 2017, Jones resigned his position with the City; and in May 2017, Jones's original attorney withdrew and a new attorney was substituted in. *Id.* at 1–2. Wilson also asserts that, as of the date of filing, neither party had been deposed. *Id.* at 2. This motion was referred to Judge Hawley pursuant to Rule 71, and a Report and Recommendation ("R&R"), ECF No. 36, was entered December 7, 2017, recommending that the motion be denied. Wilson timely filed an objection to the R&R. Objection, ECF No. 39. Thereafter, Jones filed a motion for summary judgment. Mot. Summ. J., ECF No. 49.

## DISCUSSION

### I. Motion for Leave to File an Amended Complaint

Courts "should freely give [parties] leave" to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A]fter the expiration of the trial court's Scheduling Order deadline to amend pleadings," however, "the moving party must show 'good cause'" pursuant to Rule 16(b). *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). "In making a Rule 16(b) good-cause determination, the primary consideration . . . is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). Also relevant is whether the amendment will prejudice the opposing party and whether the amendment was necessitated by the opposing party's actions or failure to act. *See* 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1522.2 (3d ed. 2018). Relief is not warranted if the party seeking it has not acted diligently, if it is sought because of attorney

neglect or inadvertence, or if the party seeking it has failed to satisfactorily explain delays that led to the need for modification of the scheduling order. *Id.*

Judge Hawley recommends Wilson's motion for leave to file an amended complaint be denied because Wilson has not shown good cause. R&R 1, 4 ("[T]here is nothing in the record to indicate . . . [she] faced impediments in filing her motion to amend at an earlier time."). Wilson's lack of diligence is demonstrated by the months that passed between the time of the "substantial change[s] in the circumstances" and her motion to amend: the City adopted its new policy in January 2017; Wilson became aware of the new policy when Jones asked her to sign it after its adoption; Wilson was tested pursuant to this policy in April 2017; and Wilson was aware of Jones's resignation since at least June 2017, evidenced by her FOIA request for the Separation Agreement, dated May 23, 2017, FOIA Request, Mem. Opp. Mot. Leave Amend Ex. A, ECF No. 35. *Id.* at 4–5. Nor does the substitution of defense counsel support her request to amend. *Id.* at 4. Judge Hawley also concludes that Wilson cannot satisfy the more liberal standard for amendment under Rule 15(a)(2) either. *Id.* at 5. He finds that the eight months between the amended pleadings deadline and the November filing of her motion to amend amounts to undue delay and that allowing the amendment, which would reintroduce the City as a defendant, would unduly prejudice the City, as well as Jones. *Id.* at 5–6.

Parties may object to a magistrate judge's recommended disposition within fourteen days of being served with a copy. Fed. R. Civ. P. 72(b)(2). "[T]he district court judge must make a de novo determination only of those portions of the magistrate judge's disposition to which specific written objection is made." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Id.* The district judge may accept, reject, or modify the

recommended disposition, or return it to the magistrate judge for further proceedings. Fed. R. Civ. P. 72(b)(3).

Wilson objects to Judge Hawley's conclusion that she was not diligent in filing her amended pleading. Objection 1. As diligence is the "primary consideration" in determining whether a party has shown good cause under Rule 16(b), *see Alioto*, 651 F.3d at 720, the Court construes this as an objection to Judge Hawley's finding that Wilson has not established good cause. Accordingly, the Court will review this issue de novo. *See* Fed. R. Civ. P. 72(b)(3).

To substantiate her objection, Wilson recounts various delays in opposing counsel's document production between March and September 2017, as well as attorney communications related to the scheduling of depositions between August and December 2017. Objection 1–4. Relief under Rule 16(b) can be appropriate where the amendment was necessitated by the opposing party's actions or failure to act. *See* 6A Charles Alan Wright et al., *supra*, § 1522.2. But Wilson does not identify how opposing counsel's alleged delay in producing certain documents precluded her from seeking amendment at an earlier date. None of these documents informed her of the "substantial change[s]," which she argues justify the timing of her proposed amendment, as well as the proposed amendment itself. *See* Mot. Leave Amend 1–2. The City adopted its new policy on drug testing in January 2017; Wilson became aware of the new policy when Jones asked her to sign it following its adoption; Wilson was drug tested pursuant to this policy in April 2017; and Wilson was aware of Jones's resignation since, at least, June 2017. These ten, seven, and five month delays, respectively, demonstrate a lack of diligence. *See Alioto*, 651 F.3d at 720 (affirming denial of leave to amend where the plaintiff waited eight months past the amended pleadings deadline and two months after receiving the defendants'

motion to dismiss, which allegedly triggered the plaintiff's amendment, because this constituted "insufficient diligence").

Wilson also points to the fact that Jones obtained new counsel in May 2017 and that, as of the date of her motion for leave to amend, neither Wilson's nor Jones's depositions had been taken. Mot. Leave Amend 1–2. Wilson cites no legal support for the proposition that either of these circumstances demonstrates good cause. Finally, Wilson asserts, "[s]ince we filed this case and continuing we have interviewed a number of potential witness who are employed, or were employed by the City . . . and who have direct knowledge . . . of the information that was relevant to our request to file an amended complaint." Objections 4. She does not identify specific witnesses, specific information they had regarding her amendment, or explain why she could not obtain this information before November 2017. The Court is still without an adequate explanation for the eight-month delay. The Court also finds that permitting amendment would prejudice the City, which was terminated as a defendant before discovery commenced, as well as Jones, who has abided by the Rule 16 Scheduling Order. Wilson has not established good cause.

Having reviewed de novo the contested portion of the R&R, the Court reviews its remainder for clear error only. *See Johnson*, 170 F.3d at 739. Specifically, Judge Hawley's conclusion that Plaintiff also cannot satisfy Rule 15(a)(2)'s more liberal standard for amendment. Upon review, the Court finds no such error and the remainder of the R&R is ADOPTED. Plaintiff's motion for leave to file an amended complaint is DENIED.

## II. Motion for Summary Judgment

Jones now moves for summary judgment as to all of Wilson's remaining claims. Mot. Summ. J. 2 ("Jones requests this Court dismiss with prejudice Wilson's remaining 42 U.S.C. §§ 1981 and 1983 claims . . . based on Wilson's inability to show a constitutional deprivation or

8

because Jones is entitled to qualified immunity."). But Jones provides legal argument only as to the Fourth Amendment claim pursuant to § 1983 and Jones's entitlement to qualified immunity as to this claim. These are the arguments the Court will address. *See* CDIL-LR 7.1(D)(1)(c) (providing that a motion for summary judgment must include an argument section, including citations to supporting authority, for each separate point of law).[4]

### a. Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). "A genuine issue for trial exists only when a reasonable jury could find for the party

---

[4] The Court's Order on the motion to dismiss identified a similar issue regarding Defendants' supporting memorandum. Defendants moved to dismiss the entire complaint, but did not argue that the § 1983 claims against Jones in his individual capacity must be dismissed. Thus, the Court found Defendants failed to support with argument their request for dismissal of the entire case and addressed only the arguments made. Order 2–3.

In the motion for summary judgment, Jones argues he is entitled to summary judgment as to "Wilson's remaining 42 U.S.C. §§ 1981 and 1983 claims alleging Jones drug-tested Wilson because she was black based on Wilson's inability to show a constitutional deprivation or because Jones is entitled to qualified immunity," Mot. Summ. J. 2; "[a]s the drug test was not a violation of Wilson's constitutional rights, Wilson's claims under Section 1981 and 1983 must fail and the Court need not conduct any further inquiry," *id.* at 11; and, in the argument section on qualified immunity, Jones argues "Wilson also cannot show that Galesburg failed to drug test a white employee situated similarly to Wilson," *id.* at 20. Jones's brief's passing references to § 1981 do not suffice. Jones's brief cites only Fourth Amendment case law and case law on the general principles of qualified immunity. And, although his third argument uses equal protection language, he cites no supporting equal protection case law. Moreover, in his Reply, Jones states that any allegations that Wilson was treated differently than similarly situated white employees are "a red herring" with "nothing to do with the case at bar." Reply 22. The Court fails to understand this argument as one of the claims that went forward following the motion to dismiss was an equal protection claim against Jones in his individual capacity pursuant to § 1983. *See* Order 5, 8.

opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quoting *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994)).

### b. Analysis

Jones argues he is entitled to summary judgment as to the Fourth Amendment claim because he had a legitimate purpose for placing Wilson in the drug testing pool, that is, he acted pursuant to FTA regulations. Mot. Summ. J. 2, 12–17. In addition, Jones argues Wilson's consent defeats her Fourth Amendment claim and, regardless, he is entitled to qualified immunity. *Id.* at 9–11, 17–20. In response, Wilson argues she should not have been added to the drug testing pool because she is not a dispatcher within the meaning of the FTA regulations and that she was added to the pool because of her race. Mem. Opp. Summ. J. 7–8, ECF No. 52.

### 1. Fourth Amendment

The Supreme Court has held that compelled urine testing for drugs constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617 (1989). The Fourth Amendment generally proscribes unreasonable searches, that is, searches conducted without a warrant supported by probable cause. U.S. Const. amend. IV. But these requirements do not necessarily apply in the context of drug testing. "[I]n the context of safety and administrative regulations," the Supreme Court has upheld suspicionless searches where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 829 (2002) (quotation marks omitted); *see also Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 668 (1989) ("[I]n certain limited circumstances, the Government's need to discover such latent or hidden conditions, or to prevent their development, is sufficiently

compelling to justify the intrusion on privacy entailed by conducting such searches without any measure of individualized suspicion."). "[W]hen such a special need exists, courts should 'balance the individual's privacy expectations against the government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context.'" *Krieg v. Seybold*, 481 F.3d 512, 517 (7th Cir. 2007) (quoting *Nat'l Treasury Emps. Union*, 489 U.S. at 665)). This balancing test presents a question of law. *Shepherd v. City of E. Peoria*, No. 13-cv-1526, 2015 WL 2455084, at *4 (C.D. Ill. May 22, 2015) (citing *Bolden v. Se. Penn. Transp. Auth.*, 953 F.2d 807, 822 & n.23 (3d Cir. 1991)).

Jones submits to the Court that it need not determine whether a special need exists and, if so, whether the balance between Wilson's privacy expectations and the government's interests is such that random drug testing is constitutionally permissible. Mot. Summ. J. 12. Jones suggests that because Congress mandated drug testing of persons who perform safety-sensitive functions, and Wilson performs a safety-sensitive function, the drug testing necessarily comports with the Fourth Amendment. *Id.* The Court disagrees; statutes and regulations do not automatically relieve the government of its obligation to establish the presence of a special need and that the government interests at stake outweigh the individual's privacy expectations. *See Gonzalez v. Metro. Transp. Auth.*, 174 F.3d 1016, 1023 (9th Cir. 1999) (rejecting a similar argument in a Fourth Amendment challenge to the same regulations stating "[w]e cannot simply defer to the administrative agency's determination that dispatchers perform a 'safety-sensitive function.'") (citing *Nat'l Treasury Emps. Union*, 489 U.S. at 677–78, where the Supreme Court did not defer to the Treasury Department's determination that employees handling classified materials performed safety-sensitive functions because the record raised "the question whether . . . this category of employees [has been defined] more broadly than is necessary"); *see also Gonzalez v.*

*Metro. Transp. Auth.*, 73 F. App'x 986, 988–90 (9th Cir. 2003) (conducting the balancing analysis).

Neither party conducted this analysis in their respective summary judgment briefing, so the Court will not conduct it either. In addition, the Court finds that such an analysis is unnecessary to determine that Jones is entitled to qualified immunity, as his actions were not clearly unconstitutional in light of existing law.

### 2. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[O]nce the public official raises the defense of qualified immunity, the plaintiff bears the burden of showing (1) whether . . . she has asserted a violation of a constitutional right, and (2) whether the applicable constitutional standards were clearly established at the time in question." *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998). A district court may address these questions in either order. *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "If the right at issue was not clearly established at the time of the violation, the Court may exercise its discretion not to determine whether the defendant violated that plaintiff's constitutional right." *Deputy v. City of Seymour*, 34 F. Supp. 3d 925, 932 (S.D. Ind. 2014).

A constitutional right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quotation marks omitted). In conducting its inquiry, the Court looks to controlling precedent from the Supreme Court and the Seventh

Circuit. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013). "[I]f there is no such precedent [it] cast[s] a wider net and examine[s] all relevant case law to determine whether there was such a clear trend in the case law that [it] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Id.* (quotation marks omitted). "But a case directly on point is not required." *Id.* (quotation marks omitted); *see also Estate of Escobedo*, 600 F.3d at 779 (noting that "the unlawfulness must be apparent in light of the pre-existing law" (quotation marks omitted)).

In a 2007 case, the Seventh Circuit described a spectrum of cases addressing Fourth Amendment challenges to random drug testing:

> Courts have widely permitted random drug testing of public employees who work with large, mobile equipment. Random drug testing is permitted in the aviation industry, including testing of air traffic controllers, aircraft maintenance personnel, flight crew members, and flight attendants. Courts have also upheld random drug testing for employees in the rail, highway, and water transportation industries; including railroad safety inspectors, highway and motor carrier safety specialists, and lock and dam operators. A number of courts have also upheld drug testing of heavy equipment operators, such as forklift operators, tractor operators, engineering operators and crane operators because of the threat to other persons in the area.
>
> At the same time, courts have recognized an outer limit on the nature of the safety threat that justifies random drug testing. *See, e.g.*, *Burka v. N.Y. City Transit Auth.*, 751 F. Supp. 441, 443–44 (S.D.N.Y. 1990) (holding that elevator operators, carpenters, masons, plumbers, sign painters, and power distribution maintainers are not in safety sensitive positions); *Nat'l Treasury [Emps.] Union v. Watkins*, 722 F. Supp. 766, 770 (D.D.C. 1989) (granting preliminary injunction against random drug testing of Department of Energy employees whose job duties included driving cars and vans with documents); *Nat'l Treasury [Emps.] Union v. Lyng*, 706 F. Supp. 934, 947 (D.D.C. 1988) (granting a preliminary injunction to Department of Agriculture employees who drove a daily shuttle bus, a mail van, and passenger cars).

*Krieg*, 481 F.3d at 518 (some citations omitted); *see also Dimeo v. Griffin*, 943 F.2d 679, 684–85 (7th Cir. 1991) (noting that "[r]andom drug-testing of transportation workers is consistently upheld, whether they are railroad employees, truck drivers, airline pilots, or bus drivers" and that

13

"[i]t is desirable . . . not to multiply legal distinctions indefinitely" regarding testing some employees but not others in a heavily regulated industry with important state interests at stake); *id.* (holding that a rule requiring jockeys, drivers, and other participants in horse races, including starters, assistant starters, and parade marshals, to submit to suspicionless drug testing did not violate the Fourth Amendment). Other courts have noted the unpredictable nature of the balancing analysis for suspicionless drug testing. *See Gonzalez*, 174 F.3d at 1020–21 (collecting cases) ("The urine testing cases decided by the Supreme Court over the last decade have gone both ways depending on their quite particularized facts."); *Hansen v. Cal. Dep't of Corrs.*, 920 F. Supp. 1480, 1487 (N.D. Cal. 1996) ("As the cases have addressed new situations, it has become more apparent that the balancing test often is a subtle undertaking, requiring exercises of judgment and discrimination that are not always self-evident or self-executing—and therefore not always predictable with confidence.").

Although Wilson is not classified as a dispatcher, it is undisputed that her job duties include dispatching the Handivans. She fields calls from Handivan passengers about where and when to pick them up and relays that information to drivers. Without this information, the drivers would not know where to go or when to go there. In 2014, it was not clearly established that a public employee with job duties similar to Wilson's could not be subjected to random drug testing consistent with the Fourth Amendment. A case directly on point is not required for the constitutional standards to be clearly established, *see Abbott*, 705 F.3d at 731, but the Court has not found one sufficiently analogous. The most applicable case is *Gonzalez*, where the Ninth Circuit held that a bus dispatcher could be randomly drug tested pursuant to the same FTA regulations, though in the context of a large urban mass transit system. *Gonzalez*, 73 F. App'x at

14

988–90 (noting that the dispatcher's duties included responding to emergencies and calling police if needed).

That Jones acted pursuant to valid FTA regulations also bears on the question of qualified immunity. *See Sherman v. Four Cnty. Counseling Ctr.*, 987 F.2d 397, 401 (7th Cir. 1993) (concluding that a police officer who acted pursuant to a facially valid statutory scheme was entitled to qualified immunity). Wilson has cited no cases questioning the constitutional validity of these regulations, the breadth of the FTA's definition of safety-sensitive functions, or any cases where random drug testing has been invalidated as applied to a person performing factually analogous job duties.[5] *See Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) ("Once the defense of qualified immunity is raised, it becomes the plaintiff's burden to defeat it." (quotation marks omitted)). The FTA has acknowledged the difficulty in line-drawing with respect to employees that perform dispatch in rural and small urban settings. *See* Prevention of Alcohol Misuse and Prohibited Drug Use in Transit Operations, 66 Fed. Reg. 41996-01 (Aug. 9, 2001) (noting, in issuing its final rule, that the agency would not provide a universal definition of dispatcher, allowing employers to determine whether a particular dispatcher performs safety-sensitive functions).

Wilson has not met her burden of defeating the qualified immunity defense. In 2014, it was not clearly established that adding Wilson to the drug testing pool exceeded the "outer limit

---

[5] Wilson's arguments center, not on Fourth Amendment case law, but on Jones's interpretation of the FTA regulations defining safety-sensitive functions to include controlling dispatch of a revenue service vehicle. Wilson argues that she does not control dispatch of a revenue service vehicle because she is not classified as a dispatcher. Under FTA regulations, however, a person's job title is irrelevant to determining whether they are subject to random drug testing; it is the functions the employee performs that are determinative. *See* 49 C.F.R. § 655.1 (explaining that the regulations apply to "employees who perform safety-sensitive functions"); Prevention of Alcohol Misuse and Prohibited Drug Use in Transit Operations, 66 Fed. Reg. 41996-01 (Aug. 9, 2001) (noting that "the key consideration remains the type of work performed rather than any particular job title"). Wilson also argues that she does not control dispatch of a revenue service vehicle because she does not provide turn-by-turn guidance. Wilson provides no evidence that this is an authoritative interpretation of the regulation. Rather, this was the City's interpretation before 2014.

15

on the nature of the safety threat that justifies random drug testing." *Krieg*, 481 F.3d at 518. Accordingly, Jones is entitled to qualified immunity as to the Fourth Amendment claim.[6] The Court need not address Jones's argument that Wilson consented to the drug test.

## CONCLUSION

For the foregoing reasons, the Report and Recommendation, ECF No. 36, is ADOPTED, and Wilson's Motion for Leave to File an Amended Complaint, ECF No. 30, is DENIED. Jones's Motion for Summary Judgment, ECF No. 49, is GRANTED, though two claims remain. Jones is entitled to summary judgment as to the Fourth Amendment claim. With respect to Wilson's equal protection claim and § 1981 claim pursuant to § 1983, Jones did not provide the Court with the applicable law or argument as to why Wilson's claims fail in light of it. The Court will not make these arguments for him. Thus, the suit proceeds with two claims against Jones in his individual capacity remaining.

Entered this 10th day of May, 2018.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE

---

[6] Wilson's allegations about Jones's discriminatory motives for adding her to the drug testing pool are not relevant to the Fourth Amendment analysis, which is objective. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.").